IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LARRY MARVEL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 08-837-GMS |
| ) | |
| PERRY PHELPS, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

Larry Marvel. *Pro se* petitioner.

Elizabeth McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

**MEMORANDUM OPINION**

Feb 1, 2012
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Larry Marvel ("Marvel"). (D.I. 1) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1990, Marvel was sentenced to seventeen years of imprisonment for raping Leah Vinguierra. Throughout his incarceration, Marvel maintained that Vinguierra lied, and he sought vindication with the help of his family. In addition to filing appeals, post-conviction motions, and other petitions, Marvel tried to obtain affidavits that would establish his innocence. Marvel understood that an affidavit from Vinguierra recanting her trial testimony would be critical to his success. His family hired a private detective, who allegedly worked on Marvel's case for ten (10) years, but he was unable to find or interview Vinguierra.

While in prison, Marvel became acquainted with another inmate, James Hollis, who was serving time for unlawful sexual intercourse and other crimes. Marvel frequently told Hollis that he was innocent. In 2003, a few months before Hollis was scheduled to be released from prison, Marvel started asking Hollis to cripple Vinguierra by shooting her or stabbing her in the spine. According to Hollis, Marvel complained that Vinguierra had taken away his life and his family, and that he wanted her to pay for that by having to suffer for the rest of her life.

Hollis told Marvel that it would cost $10,000, and Marvel assured him that he could get the money from selling a beach house. Marvel gave Hollis a piece of a hospital record from the

---

[1] The factual background is recited from the Delaware Supreme Court decision regarding Marvel's direct appeal, *Marvel v. State*, 935 A.2d 256 (Table), 2007 WL 2713271 (Del. Sept. 18, 2007).

1

time of the rape containing Vinguierra's address, telephone number, and social security number. Hollis testified that Marvel told him it would be easier to find Vinguierra through the Internet with this information.

Hollis was released from prison in April 2005. A few weeks before his release, Hollis contacted the authorities and told them about Marvel's plan to harm Vinguierra. Hollis cooperated with the police by giving them several letters that the two men had written to each other after Hollis left prison.

In December 2005, a New Castle County grand jury indicted Marvel on charges of attempted first degree assault, second degree criminal solicitation, and second degree conspiracy. (D.I. 15 at 1) In May 2006, a Delaware Superior Court jury found him not guilty of attempted assault and guilty of the remaining two charges. The Superior Court sentenced Marvel as an habitual offender to life imprisonment. *Id.* Marvel's convictions and sentence were affirmed on direct appeal. *See Marvel,* 2007 WL 2713271.

In November 2007, Marvel filed a motion for correction of an illegal sentence pursuant to Delaware Superior Court Criminal Rule 35(a). The Superior Court denied the Rule 35(a) motion, and the Delaware Supreme Court affirmed that judgment. *See Marvel v. State,* 947 A.2d 1122 (Table), 2008 WL 1813171 (Del. Apr. 23, 2008).

Marvel then filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the claims in the Rule 61 motion as procedurally defaulted, and the Delaware Supreme Court affirmed that decision. *See Marvel v. State,* 957 A.2d 2 (Table), 2008 WL 4151830 (Del. Sept. 10, 2008).

Thereafter, Marvel filed two additional Rule 35 motions for correction of illegal sentence.

The Superior Court denied the motions, and the Delaware Supreme Court affirmed those decisions. *See Marvel v. State*, 977 A.2d 899 (Table), 2009 WL 2158107 (Del. July 21, 2009); *Marvel v. State*, 5 A.3d 631 (Table), 2010 WL 3636193 (Del. Sept. 20, 2010).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

3

>   (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

### C. Standard of Review

#### 1. Deferential standard of § 2254(d)

When a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

4

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

### 2. *De novo* standard of review

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim *de novo*. *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011)(citing *Porter v. McCollum*, __ U.S. __, 130 S.Ct. 447 (Jan. 19, 2011)). *De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (2000)(O'Connor, J., concurring).

### 3. Section 2254(e) and the presumption of correctness

Finally, whether reviewing a habeas application *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both implicit and explicit findings of fact, and can only be rebutted by the petitioner upon a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S.

322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Marvel's petition asserts the following four grounds for relief: (1) the trial court abused its discretion by admitting evidence of Marvel's prior convictions under Delaware Rule of Evidence 609(b); (2) Count II of the Indictment was defective because it failed to precisely identify the date and/or time of criminal solicitation or any specific act of criminal solicitation; (3) Marvel's First Amendment rights were violated because his letters to Hollis following Hollis' release from prison did not contain any explicit plans to harm the victim; and (4) there was insufficient evidence to support his conviction for criminal solicitation. The State contends that claims one, three, and four should be denied as procedurally barred, and that claim two should be either be denied for failing to assert an issue cognizable on habeas review or for being meritless.

### A. Claim One

During the trial, Hollis testified about Marvel's plan to have Hollis permanently cripple Vinguierra. Hollis also testified that the letters he received from Marvel after Hollis' release were written in code and discussed the plans for Hollis to seriously and permanently disable Vinguierra.

Marvel testified on his own behalf. He explained in detail all of the steps he took in pursuing his various post-trial motions, all of the attorneys and investigators he hired, and all of the money his family spent. Marvel told the jury he decided to utilize Hollis to obtain a new statement from Vinguierra recanting her story or to find new witnesses to help him with his rape

conviction. Marvel explained certain statements contained in his letters to Hollis, and he denied ever asking Hollis to cripple or maim Vinguierra.

Following Marvel's direct examination, the State moved to introduce evidence of Marvel's prior convictions of second degree rape from 1979, first degree unlawful imprisonment from 1980, and grand larceny from 1972 for the purpose of showing the jury that Marvel was not someone merely trying to clear his name. The defense objected to the motion because the three convictions fell outside the ten-year period outlined in Delaware Rule of Evidence 609(b).[2] However, the trial court allowed the admission of the prior convictions evidence under Delaware Rule of Evidence 609(b) after determining that the "probative value does substantially outweigh the prejudicial effect, since [Marvel] has claimed in his direct testimony that he was attempting to clear his good name. And that may well be a strong motivation for a person who has one and only one conviction that he's trying to clear himself of, that motivation may be weakened by evidence that there were previous convictions. So [Marvel] has opened the door by his own testimony." (D.I. 17, App. to Appellant's Op. Br. in *Marvel v. State*, No.548,2006, at A-168)

On direct appeal, Marvel contended that the trial court erred in concluding that he had opened the door to the introduction of his prior convictions for impeachment purposes, because he never actually testified that he was attempting to clear his name. The Delaware Supreme Court rejected this argument, because the "**thrust** of virtually all of Marvel's testimony (including his response to [defense counsel's question regarding Marvel's interest in clearing his

---

[2]Delaware Rule of Evidence 609(b) provides, in relevant part, that
Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction [] unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

7

name]) [] was that Marvel solicited Hollis to help Marvel clear his name." *Marvel*, 2007 WL 2713271, at *2 (emphasis added).

Now, in claim one, Marvel contends that the trial court violated his right to due process by erroneously admitting his prior convictions evidence under D.R.E. 609(b). The State contends that Marvel failed to exhaust state remedies because he did not "fairly present" the instant claim to the Delaware Supreme Court as a federal due process issue.

Although it is not necessary for a petitioner to cite the federal constitution "book and verse" in order to "fairly present" a federal claim to a state court, it is well-settled that a habeas petitioner who "wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment [] must say so." *Duncan v. Henry*, 513 U.S. 364, 366 (1995)(holding that a claim of "miscarriage of justice" does not qualify as a federal constitutional claim"). The Third Circuit Court of Appeals has clarified this rule, specifically holding that

> [a petitioner does] not invoke the federal due process guarantee [by claiming that] the admission of the evidence produced a "miscarriage of justice" [or] argu[ing] that the [trial process] denied him a "fair trial." Since the Supreme Court found the former language insufficient to give fair notice of a federal due process claim, we are hesitant to attach greater significance to the passing reference to the concept of a "fair trial" on which [the petitioner's] argument rests.

*Keller v. Larkins*, 251 F.3d 408, 413-15 (3d Cir. 2001). Rather, a federal legal claim is "fairly presented" to state courts when there is: (1) reliance in the state courts on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.

8

1999).

After viewing Marvel's presentation of claim one to the Delaware Supreme Court on direct appeal within the framework provided by the aforementioned precedent, the court concludes that Marvel's appellate argument regarding D.R.E. 609(b) does not satisfy the "fair presentation" component of the exhaustion doctrine. On direct appeal, Marvel argued that the trial court's factual mistake regarding the content of his trial testimony led to the trial court's erroneous conclusions that he had opened the door to impeachment evidence and that the probative value of that evidence outweighed its prejudicial effect. In presenting this argument to the Delaware Supreme Court, Marvel did not even remotely allege that the introduction of such evidence deprived him of a fair trial or otherwise violated due process, and the federal and state cases to which he cited did not employ any federal due process analysis. Additionally, the appellate brief's "abuse of discretion" argument does not bring due process concerns to mind or allege "a pattern of facts that is well within the mainstream of constitutional litigation." For all of these reasons, the court concludes that Marvel did not exhaust state remedies for claim one because he presented the claim to the Delaware Supreme Court in terms of a state evidentiary error rather than as a violation of a constitutional right.

At this juncture, state procedural rules would bar Marvel from obtaining further review of claim one in the Delaware state courts.[3] Consequently, the claim is deemed exhausted but procedurally defaulted, and the court can only reach the merits of claim one if Marvel

---

[3] Marvel cannot exhaust state remedies by including claim one in a new Rule 61 motion in order to appeal an adverse decision to the Delaware Supreme Court. Delaware Superior Court Criminal Rule 61(i)(1) would bar review of the claim as untimely, and Rule 61(i)(2) would bar review of the claim as repetitive. *See, e.g., Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding).

demonstrates cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of habeas review.

Marvel does not assert any cause for his default of claim one. In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Marvel's default because he has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

Nevertheless, even if claim one should be treated as exhausted, the court finds no basis on which to conclude that the admission of Marvel's prior convictions evidence violated Marvel's right to due process.[4] To begin, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting impeachment evidence in the form of prior convictions evidence. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991)(expressly withholding an opinion as to whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a crime.); *Ohler v. United States*, 529 U.S. 753, 757 (2000)( "once the defendant testifies, [he] is subject to cross-examination, including impeachment by prior convictions, and the decision to take the stand may prove damaging instead of helpful."). On this basis alone, the court concludes that Marvel's claim does not warrant habeas relief.

Additionally, however, the court concludes that claim one does not warrant relief because

---

[4] If Marvel's presentation of claim one to the Delaware Supreme Court somehow raised a federal due process issue, the state supreme court did not address the claim as such. Consequently, the court will apply the pre-AEDPA standard and review the claim *de novo* in its alternate analysis. *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

10

the probative value of Marvel's prior conviction's evidence was not conspicuously outweighed by its inflammatory content. *See Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005)(holding that a state court's "admission of other crimes evidence provides a ground for federal habeas relief [as violating the petitioner's due process rights] []if the evidence's probative value is so conspicuously outweighed by its inflammatory content.") As is required when performing this inquiry on habeas review, the court defers to the Delaware Supreme Court's factual finding that the thrust of Marvel's testimony was that he solicited Hollis' help in clearing his name. Moreover, during cross-examination, the State merely asked Marvel to confirm the existence of his three prior convictions, and Marvel acknowledged each conviction. Significantly, the prosecution did not refer to these convictions for the remainder of the trial and, when closing, the State did not contend that Marvel's prior convictions indicated a likelihood that he had committed the offenses charged in that proceeding. Rather, the State asserted that the prior convictions raised a question about the credibility of Marvel's reason for seeking Hollis' help in finding Vinguierra. Finally, the trial court performed the proper balancing test required by D.R.E. 609(b) before admitting the evidence of Marvel's prior convictions. In short, given this record, the court cannot say that the probative value of the evidence was conspicuously outweighed by its inflammatory content. Accordingly, if Marvel's presentation of claim one to the Delaware Supreme Court exhausted state remedies for federal habeas purposes, the court alternatively denies the claim because the trial court's admission of Marvel's prior convictions for impeachment purposes did not deprive him of a fair trial or due process of law.

### B. Claims Two, Three, and Four

In claim two, Marvel contends that he was denied his due process right to have notice of

11

the charges against him because count two of the indictment (second degree criminal solicitation) failed to assert a definite date or time on which any overt act of solicitation occurred.[5] In claim three, Marvel contends that his First Amendment rights were violated when Hollis testified that Marvel's letters to him were written in code, even though the letters appeared to be harmless on their face. And finally, in claim four, Marvel asserts that there was insufficient evidence presented at trial to sustain his conviction for criminal solicitation.

Marvel did not raise any of these claims during his trial or on direct appeal. Therefore, when he presented claims two, three, and four to the Delaware Superior Court in his Rule 61 motion, the Superior Court denied the claims as procedurally defaulted under Rule 61(i)(3).[6] The Delaware Supreme Court affirmed that judgment after holding that Marvel's default of all three claims should not be excused under the miscarriage of justice exception contained in Rule 61(i)(5).[7]

---

[5] Count two of the indictment charged Marvel with criminal solicitation during the period "January 1, 2002 through October 18, 2005," and asserted that Marvel "did solicit, request, or otherwise attempt to cause James Hollis to engage in conduct which would constitute the felony of Assault First Degree, to-wit: he did solicit James Hollis to cause physical injury to [the victim] by shooting or stabbing her."

[6] Although Marvel presented these same three arguments to the Delaware Supreme Court when he appealed the Superior Court's denial of his first motion for correction of an illegal sentence pursuant to Delaware Superior Court Criminal Rule 35(a), that presentation did not exhaust state remedies. As explained by the Delaware Supreme Court, a "motion under Rule 35(a) is not an appropriate means to argue alleged errors in the underlying conviction. [] The relief Marvel seeks may be pursued only through a motion for postconviction relief under Superior Court Criminal Rule 61." *Marvel*, 2008 WL 1813171, at *1.

[7] During Marvel's Rule 61 appeal, the Delaware Supreme explicitly considered whether Marvel's procedural default of claims two, three, and four under Rule 61(i)(3) could be excused under Rule 61(i)(5)'s "miscarriage of justice" doctrine. *Marvel*, 2008 WL 4151830. The State appears to view the Delaware Supreme Court's review of claim two (deficient indictment/lack of notice claim) under Rule 61(i)(5) as an alternate holding on the merits (but does not appear to

12

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. Superior Court Criminal Rule 61 constitutes an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of the aforementioned claims absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Marvel contends that his default of claims two, three, and four should be excused because defense counsel rendered ineffective assistance by not raising these issues on direct appeal. (D.I. 19 at 28) Although Marvel did assert this particular ineffective assistance of counsel argument in his Rule 61 motion, he did not present the argument in his subsequent post-conviction appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted,[8] and cannot excuse Marvel's procedural default of claims two, three, and four. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

---

view the Delaware Supreme Court's analysis of claims three and four under Rule 61(i)(5) as an alternate holding on the merits). (D.I. 15 at 11-12) The court disagrees with the State's implicit conclusion regarding claim two. *See, e.g, Campbell v. Burris*, 515 F.3d 172, 181-82 (3d Cir. 2008)(holding that Delaware Supreme Court Rule 8 constitutes an independent and adequate state ground precluding federal habeas review despite the existence of its "interest of justice" safety valve). Nevertheless, even if the Delaware Supreme Court's review of claim two (and claims three and four) under Rule 61(i)(5) should be viewed as an alternate holding on the merits, the court still concludes that it is procedurally barred from reviewing the claim(s) because the Delaware Supreme Court explicitly invoked Rule 61(i)(3) as a separate basis for its decision. *See Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004); *United States ex rel Caruso v. Zelinsky*, 689 F.2d 435, 550 (3d Cir. 1982).

[8]*See* Del. Super. Ct. Crim. Rule 61(i)(2).

Marvel's failure to establish cause eliminates the need to address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Marvel's default because he has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claims two, three, and four as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Marvel's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Marvel's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.